**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER. | |
| Plaintiff, | Case No. 1:21-cv-2156 |
| v. | |
| UNITED STATES POSTAL SERVICE, *et al.* | |
| Defendants. | |

**<u>DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.      THE UNITED STATES POSTAL SERVICE ..................................................................2

II.     THE UNITED STATES POSTAL INSPECTION SERVICE AND THE INTERNET
        COVERT OPERATIONS PROGRAM....................................................................................4

III.    PROCEDURAL BACKGROUND.......................................................................................5

STANDARD OF REVIEW ................................................................................................ 5

ARGUMENT ...................................................................................................................... 6

I.      EPIC LACKS STANDING ...............................................................................................6

        A.      EPIC Has Not Adequately Alleged Any Injury To Itself Or Its Members.............6

        B.      EPIC And Its Members' Alleged Injuries Are Not Redressable ..........................11

II.     DEFENDANTS ARE EXEMPTED FROM THE APA, AND EPIC THEREFORE
        LACKS A CAUSE OF ACTION ......................................................................................13

III.    DEFENDANTS ARE NOT SUBJECT TO THE E-GOVERNMENT ACT ...................14

        A.      The Postal Reorganization Act Exempts USPS From The E-Government Act ....14

        B.      The E-Government Act Does Not Expressly Apply to USPS ..............................16

CONCLUSION.................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Aid Ass'n for Lutherans v. USPS,*

    321 F.3d 1166 (D.C. Cir. 2003) ............................................................................. 13

*Am. Clinical Lab Ass'n v. Azar,*

    931 F.3d 1195 (D.C. Cir. 2019) ............................................................................. 13

*Am. Nat. Ins. Co. v. FDIC,*

    642 F.3d 1137 (D.C. Cir. 2011) ............................................................................... 4

\* *Am. Postal Workers Union, AFL-CIO v. USPS,*

    541 F. Supp. 2d 95 (D.D.C. 2008) .................................................................... 15, 16

*Am. Soc'y for the Prevention of Cruelty to Animals v. Feld Entm't, Inc.,*

    659 F.3d 13 (D.C. Cir. 2011) ............................................................................... 8, 9

*Armstrong v. Exec. Office of the President,*

    90 F.3d 553 (D.C. Cir. 1996) ................................................................................ 14

*Ashcroft v. Iqbal,*

    556 U.S. 662 (2009) ................................................................................................ 6

*Booher v. USPS,*

    843 F.2d 943 (6th Cir. 1988) ................................................................................ 13

*Carlin v. McKean,*

    823 F.2d 620 (D.C. Cir. 1987) ........................................................................... 2, 13

*City of Thousan Oaks v. United States,*

    396 F. Supp. 1306 (C.D. Cal. 1974) ....................................................................... 2

*Currier v. Potter*,

   379 F.3d 716 (9th Cir. 2004) ............................................................... 13

*EEOC v. St. Francis Xavier Parochial School*,

   117 F.3d 621 (D.C. Cir. 1997) ............................................................... 6

 * *EPIC v. Dep't of Commerce*,

   928 F.3d 95 (D.C. Cir. 2019) ....................................................... *passim*

*EPIC v. Nat'l Sec. Comm'n on Artificial Intelligence*,

   419 F. Supp. 3d 82 (D.D.C. 2019) ................................................ 14, 18

* *EPIC v. Pres. Advisory Comm'n on Election Integrity*,

   878 F.3d 371 (D.C. Cir. 2017) ......................................................... 1, 8, 9

*EPIC v. Pres. Advisory Comm'n on Election Integrity*,

   266 F. Supp. 3d 297 (D.D.C. 2017) ....................................................... 13

*Equal Rights Ctr. v. Post Props, Inc.*,

   633 F.3d 1136 (D.C. Cir. 2011) ............................................................... 7

*Fla. Audobon Soc'y v. Bentsen*,

   94 F.3d 658 (D.C. Cir. 1996) (en banc) ............................................... 11

*Friends of Animals v. Jewell*,

   828 F.3d 989 (D.C. Cir. 2016) ............................................................... 8

*Griffith v. Federal Labor Relations Authority*,

   842 F.2d 487 (D.C. Cir. 1988) ............................................................... 13

*Harrison v. USPS*,

   840 F.2d 1149 (4th Cir. 1988) ............................................................... 13

*Havens Realty Corp. v. Coleman*,

    455 U.S. 363 (1982).............................................................................................. 8

*Herbert v. Nat'l Acad. of Scis.*,

    974 F.3d 192 (D.C. Cir. 1992).............................................................................. 6

*Hunt v. Wash. State Apple Advert Comm'n*,

    432 U.S. 333 (1977).................................................................................... 6, 10

*Indep. Cosmetic Mfrs. & Distribs., Inc. v. U.S. Dept of Health, Educ. & Welfare*,

    574 F.2d 553 (D.C. Cir. 1978)........................................................................... 14

*Kuzma v. USPS*,

    798 F.2d 29 (2d Cir. 1986)........................................................................ 18, 19

*Local 130, IUERMW v. McCulloch*,

    345 F.2d 90 (D.C. Cir. 1965)............................................................................. 13

*Lexmark Intern. v. Static Control Components, Inc.*,

    572 U.S. 118 (2014)......................................................................................... 13

*Lujan v. Defs. of Wildlife*,

    504 U.S. 555 (1992).................................................................................. 6, 7, 11

*Mail Order Ass'n of Am. v. USPS*,

    986 F.2d 509 (D.C. Cir. 1993)............................................................................. 2

*Morales v. TransWorld Airlines, Inc.*,

    504 U.S. 374 (1992)......................................................................................... 17

*N. Air Cargo v. USPS*,

    674 F.3d 852 (D.C. Cir. 2012)........................................................................... 13

*Nat'l Easter Seal Soc'y v. USPS*,

    626 F.2d 754 (D.C. Cir. 1981) ...................................................................... 2, 13, 15

*Nat'l Parks Conservation Ass'n v. Manson*,

    414 F.3d 1 (D.C. Cir. 2005) ...................................................................... 11

*Nat'l Treasury Emps. Union v. United States*,

    101 F.3d 1423 (D.C. Cir. 1996) ...................................................................... 8

*People for the Ethical Treatment of Animals v. USDA*,

    797 F.3d 1087 (D.C. Cir. 2015) ...................................................................... 7

*Public Citizen, Inc. v. Trump*,

    297 F. Supp. 3d 6 (D.D.C. 2018) ...................................................................... 6, 7, 10

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,

    566 U.S. 639 (2012) ...................................................................... 17

*Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*,

    489 F.3d 1267 (D.C. Cir. 2007) ...................................................................... 11

*Shane v. Buck*,

    817 F.2d 87 (10th Cir. 1987) ...................................................................... 18

*Shane v. Buck*,

    658 F. Supp. 908 (D. Utah 1985) ...................................................................... 18, 19

*Steel Co. v. Citizens for a Better Env't*,

    523 U.S. 83 (1998) ...................................................................... 5

*Summers v. Earth Island Inst.*,

    555 U.S. 488 (2009) ...................................................................... 11

*USPS v. Flamingo Indus. (USA) Ltd.*,

   540 U.S. 736 (2004) ............................................................................................ 2

*Zukerman v. USPS*,

   961 F.3d 431 (D.C. Cir. 2020) ........................................................................ 2

**Statutes**

5 U.S.C. § 104 ...................................................................................................... 18

5 U.S.C. § 706 ........................................................................................................ 5

39 U.S.C. § 101 ...................................................................................................... 1

39 U.S.C. § 201 ................................................................................................. 1,18

* 39 U.S.C. § 410 ........................................................................................... *passim*

44 U.S.C. § 3502 ................................................................................................. 17

E-Government Act § 201 (44 U.S.C. § 3501 note) ............................................ 17

E-Government Act § 208 (44 U.S.C. § 3501 note) ..................................... *passim*

Pub. L. 108-178 § 4(j), Dec. 15, 2003, 117 Stat. 3642 .................................... 16

Pub. L. 111-350 § 5(k), Jan. 4, 2011, 124 Stat. 3850 ..................................... 16

**Regulations**

39 C.F.R. § 233 ..................................................................................................... 4

**Other Authorities**

*Enhancing the Management and Promotion of Electronic Government Services and Processes*,

   Senate Hearing on H.R. 2458, 148 Cong. Rec. S11227-01, 2002 WL 31537194 (Nov. 15,

   2002) .............................................................................................................. 20

Office of Management & Budget, M-03-22, *Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002* ............................................................................ 12

H.R. Rep. No. 107-787, 2002 WL 31618478 (Nov. 14, 2002) .................................................. 20

*Paperwork and Redtape Reduction Act of 1979: Hearing Before the Subcommittee on Federal Spending Practices and Open Government of the Committee on Governmental Affairs*, U.S. Senate, 96th Cong. 1st Session on S. 1411 (November, 1979) ................................................ 19

USPIS, *Annual Report 2019* ............................................................................................ 4

USPS, Handbook AS-353, *Guide to Privacy, the Freedom of Information Act, and Records Management* ...................................................................................................................... 3

USPS, *Privacy Impact Assessments (PIA)* ........................................................................ 3

## INTRODUCTION

The United States Postal Inspection Service ("USPIS") is the law-enforcement component of the United States Postal Service ("USPS" or "the Postal Service"), charged with protecting USPS and its employees and facilities, and investigating and preventing postal-related crime. In furtherance of that mission, USPIS established the Internet Covert Operations Program ("iCOP") to provide open-source intelligence on individuals and organizations to support its investigations. In this lawsuit, the Electronic Privact Information Center ("EPIC") alleges that the iCOP program is procedurally defective because USPIS did not first conduct a Privacy Impact Assessment ("PIA"), as required under some circumstances by the E-Government Act of 2002.

EPIC's effort to impose the E-Government Act's procedural requirement on USPS and USPIS fails for at least three threshhold reasons: First, as the D.C. Circuit has held in previous cases filed by EPIC advancing the same theories as here, EPIC and its members suffer no injury sufficient to establish standing from an alleged violation of Section 208. *See EPIC v. Dep't of Commerce*, 928 F.3d 95, 100 (D.C. Cir. 2019) ("*EPIC II*"); *EPIC v. Pres. Advisory Comm'n on Election Intergrity*, 878 F.3d 371, 379 (D.C. Cir. 2017) ("*EPIC I*"). This Court therefore lacks subject-matter jurisdiction, and Rule 12(b)(1) requires dismissal.

Second, even if the Court were to reach the merits, the E-Government Act contains no private cause of action, and Congress specifically exempted Defendants from the Administrative Procedure Act cause of action on which Plaintiff attempts to rely. *Compare* 39 U.S.C. § 410(a) (exempting Defendants from "the provisions of chapters 5 and 7 of title 5" of the U.S. Code) *with* Compl. ¶ 57 (Count I), ¶ 65 (Count II), ECF 1 at 14, 16 (alleging violations of 5 U.S.C. § 706). Plaintiff therefore fails to state a claim and Rule 12(b)(6) requires dismissal. Finally, Plaintiff fails to state a claim because neither Defendant is an agency subject to Section 208 of the E-Government Act. For each of these reasons, Plaintiff's complaint should be dismissed.

1

## BACKGROUND

## I.     THE UNITED STATES POSTAL SERVICE

The Postal Service's "basic function" is "to bind the Nation together through the personal, educational, literary, and business correspondence of the people." 39 U.S.C. § 101(a). Achieving that purpose, in Congress' judgment, requires USPS to "operate more along the lines of a private company" than a normal agency of the federal government. *Carlin v. McKean,* 823 F.2d 620, 621 (D.C. Cir. 1987); *see also Mail Order Ass'n of Am. v. USPS,* 986 F.2d 509, 519 (D.C. Cir. 1993) (Congress granted USPS "independence to manage its operations in a professional, businesslike manner."). In the Postal Reorganization Act of 1970 ("PRA"), Congress thus established USPS as an "'independent establishment of the executive branch of the Government,'" renaming the former Post Office Department and removing it from the Cabinet. *USPS v. Flamingo Indus. (USA) Ltd.,* 540 U.S. 736, 740 (2004) (quoting 39 U.S.C. § 201); *accord Nat'l Easter Seal Soc'y v. USPS,* 656 F.2d 754, 756 (D.C. Cir. 1981). The goal was "to produce a self-supporting, efficient structure that would operate without congressional subsidies and also without excessive congressional regulation." *Id.; see also City of Thousand Oaks v. United States,* 396 F. Supp. 1306, 1308 (C.D. Cal. 1974) (Congress intended USPS to "be operated under the [PRA] free of many of the usual obstacles facing most agencies").

To this end, Congress exempted USPS from any "Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds," with the exception of those laws specified in the PRA. 39 U.S.C. § 410(a). That same section specifically exempts USPS from "the provisions of chapters 5 and 7 of title 5." *Id.*

The E-Government Act is one such federal law dealing with federal "contracts, property, works, officers, employees, budgets, or funds." *See infra*, Argument § III.A. Section 208 of the Act, the provision at issue in this case, aims to "ensure sufficient protections for the privacy of

personal information as agencies implement citizen-centered electronic Government." E-Government Act § 208(a), *codified at* 44 U.S.C. § 3501 note. It does so by requiring agencies subject to its mandate to conduct, review, and, "if practicable," to publish, a Privacy Impact Assessment ("PIA") before "initiating a new collection of information" that involves personally identifiable information that will be "collected, maintained, or disseminated using information technology," *Id.* § 208(b)(1)(A)-(B). A PIA must assess several factors, including the "information [to be] collected, why it is being collected, how it will be used, how it will be secured, with whom it will be shared, whether a system of records is being created under the Privacy Act, and what 'notice or opportunities for consent' will be provided to those impacted." *EPIC II*, 928 F.3d at 98 (quoting E-Government Act § 208(b)(2)(B)(ii)).

Although USPS, and its component USPIS, are not subject to the requirements of the E-Government Act, *see infra*, Argument § III, USPS has "adopted policies to comply voluntarily," in certain respects, "with the Act's privacy provisions." *See* USPS, Handbook AS-353, *Guide to Privacy, the Freedom of Information Act, and Records Management* § 2-3.4;[1] *see also* Compl. ¶ 15, ECF 1 at 5. In particular, USPS conducts a PIA when developing or otherwise securing an information technology system that contains personal or business sensitive information, as one component of a broader "Business Impact Assessment." *See* USPS, *Privacy Impact Assessments (PIA)*.[2] USPS makes the BIA template available on its website, and provides copies of certain BIAs upon request, *see id.*, but does not as a matter of course make all BIAs publicly available, for security and privacy reasons.

---

[1] Available at https://about.usps.com/handbooks/as353/as353c2_006.htm (last visited October 19, 2021).
[2] Available at https://about.usps.com/who-we-are/privacy-policy/privacy-impact-assessments.htm (last visited October 19, 2021).

## II.     THE UNITED STATES POSTAL INSPECTION SERVICE AND THE INTERNET COVERT OPERATIONS PROGRAM

USPIS is the component of USPS with primary responsibility for law enforcement, crime prevention, and security. *See generally* 39 C.F.R. § 233. U.S. Postal Inspectors are federal law enforcement agents charged with enforcing over 200 federal laws and conducting investigations of postal-related crime, including mail fraud and theft, violent crimes against postal employees, revenue fraud, identity theft, and the use of the mail to launder money, traffic in illegal drugs, or exploit children. *See generally* USPIS, *Annual Report 2019* 5.[3]

USPIS's Cybercrime Unit is responsible for providing investigative, forensic, and analytical support to Inspection Service field divisions, and helps safeguard the Postal Service's network infrastructure to ensure that daily operations are uninterrupted and to mitigate cyberattacks. *Id.* at 36. The Internet Covert Operations Program ("iCOP") at issue in this case is one of seven functional groups within the Cybercrime Unit, providing open source intelligence in support of USPIS investigations. *Id.* In so doing, the iCOP program protects USPS and the public "by facilitating the identification, disruption, and dismantling of individuals and organizations that use the mail or USPS online tools to facilitate black market Internet trade or other illegal activities." *Id.*

EPIC alleges—and Defendants, for purposes of the present motion only, must assume, *see, e.g.*, *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)—that USPIS has made use of a variety of electronic surveillance technologies as part of the iCOP Program, including facial recognition and social media monitoring tools, to collect personal information from social media

---

[3] Available at https://www.uspis.gov/wp-content/uploads/2020/02/FY-2019-annual-report-508-web.pdf (last visited October 19, 2021).

platforms, including facial images and identities derived from facial recognition matches. *See* Compl. ¶¶ 21-35, ECF 1 at 7-11.

## III.    PROCEDURAL BACKGROUND

EPIC filed this lawsuit on August 12, 2021. *See* Compl., ECF 1 at 19. EPIC alleges that Defendants were required to, but did not, complete a PIA in accordance with the requirements of Section 208 of the E-Government Act when initiating the iCOP Program, and when USPIS allegedly procured and used facial recognition and social media monitoring tools, and used those tools to collect personal information. *See* Compl. ¶ 56, ECF 1 at 14. EPIC alleges that Defendants thereby violated the Administrative Procedure Act ("APA") in two ways: In Count I, EPIC alleges that Defendants' actions were arbitrary, caprcious, an abuse of discretion, and otherwise not in accordance with law under 5 U.S.C. § 706(2)(a) and short of statutory right under 5 U.S.C. § 706(2)(c), Compl. ¶¶ 55-62, ECF 1 at 14-16; in Count II, EPIC alleges that, in failing to complete a PIA for the iCOP Program in accordance with Section 208 of the E-Government Act, Defendants have unlawfully withheld or unreasonably delayed agency action in violation of 5 U.S.C. § 706(1), Compl. ¶¶ 63-69, ECF 1 at 16-17. EPIC seeks injunctive and declaratory relief ordering Defendants to conduct a PIA for the iCOP Program, and suspending the Program pending the completion and publication of the PIA. Compl. Requested Relief, ECF 1 at 18.

### STANDARD OF REVIEW

On a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), "the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). In considering a motion to dismiss for lack of subject matter jurisdiction, including for lack of standing, the Court may consider the records generally available to it on a motion to dismiss for failure to state a claim, namely "the facts alleged

in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice," *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997). "[W]here necessary," however, for a jurisdictional motion to dismiss, the Court may also consider "the complaint supplemented by undisputed facts in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

To survive a motion to dismiss for failure to state a claim, a plaintiff must show that the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Zukerman v. USPS*, 961 F.3d 431, 441 (D.C. Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ARGUMENT

## I.   EPIC LACKS STANDING

Article III of the Constitution restricts the jurisdiction of the federal courts to "cases" or "controversies," and the "core component of standing is an essential and unchanging part" of that requirement. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III standing, Plaintiffs must satisfy three elements: (1) injury-in-fact; (2) causation; and (3) redressability. *Id.* at 560-61. "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561.

### A.   EPIC Has Not Adequately Alleged Any Injury To Itself Or Its Members

An organization seeking to invoke the jurisdiction of a federal court "can establish standing in one of two ways." *Public Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6, 17 (D.D.C. 2018). "It can assert 'associational standing' to sue on behalf of its members." *Id.* (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). "Or it can assert 'organizational standing' to

sue on its own behalf." *Id.* (citing *People for the Ethical Treatment of Animals v. USDA*, 797 F.3d 1087, 1093 (D.C. Cir. 2015) ("*PETA*")). Plaintiff has failed to alleged facts sufficient to satisfy standing's injury requirement under either standard.

        1.      *EPIC Has Failed to Establish Organizational Standing*

Organizations such as EPIC may invoke Article III jurisdiction in their own capacities, subject to the same requirements of injury-in-fact, causation, and redressability as individuals. *See, e.g.*, *PETA*, 717 F.3d at 1093. To show an injury-in-fact, an organization must allege a "concrete and demonstrable injury to [its] activities"; a "mere setback to [its] abstract social interests is not sufficient." *Id.* (quoting *Equal Rights Ctr. v. Post Props, Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011)). Although "standing is not precluded" when "the plaintiff is not [it]self the object of the government action or inaction [it] challenges," it is "substantially more difficult" to establish. *Lujan*, 504 U.S. at 562.

The Complaint in this case raises two theories of injury to EPIC itself in its organizational capacity. First, the Complaint alleges that the failure to publish a PIA deprived EPIC of information to which EPIC claims to be legally entitled. *See* Compl. ¶¶ 59, 61, 66-68, ECF 1 at 14-17. Second, the Complaint alleges that by failing to publish a PIA, Defendants "have frustrated Plaintiff's longstanding mission to educate the public about the government's collection of personally identifiable information and—in particular—about the unique privacy harms caused by advanced electronic surveillance technologies." *Id.* ¶¶ 59, 66, ECF 1 at 14-16. But EPIC has sought to invoke federal jurisdiction on those bases before, and the D.C. Circuit has twice rejected the attempt.

        i.      EPIC has failed adequately to allege informational injury

An organization, in much the same way as an individual, can ground its assertion of standing in a claim that it has been deprived of information to which it is legally entitled. To

7

establish such an "informational injury," a plaintiff must adequately allege that "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm that Congress sought to prevent by requiring disclosure." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016).

EPIC cannot satisfy that second requirement. "Section 208, a 'Privacy Provision[]' by its very name, declares an express 'purpose' of 'ensur[ing] sufficient protections for the privacy of personal information as agencies implement citizen-centered electronic Government.'" *EPIC I*, 878 F.3d at 378 (quoting Section 208). "[T]he provision is intended to protect *individuals* . . . by requiring an agency to fully consider their privacy before collecting their personal information," but "EPIC is not [an individual], and is therefore not the type of plaintiff the Congress had in mind." *Id.* In short, "section 208 is directed at individual *privacy*, which is not at stake for EPIC," and an alleged violation of that provision does not suffice to establish informational injury. *Id.*

ii.     EPIC has failed adequately to allege harm to its mission as an organization

An organization can also establish an injury-in-fact by alleging a "concrete and demonstrable injury to the organization's activities" that is "more than simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). But there are "two important limitations on the scope of standing under *Havens*." *Am. Soc'y for the Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011). "First, an organization seeking to establish *Havens* standing must show a 'direct conflict between the defendant's conduct and the organization's *mission*.'" *Id.* (quoting *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996)). Second, the organization must show that it has "used its resources to counteract that injury." *Id.*

8

EPIC's theory of harm to its organizational mission flounders for the same reason as its theory of informational injury: "EPIC cannot ground organizational injury on a non-existent [informational] interest." *EPIC I*, 878 F.3d at 379. In *EPIC I*, Plaintiff sued the Presidential Advisory Commission on Election Integrity for failing to publish a PIA under Section 208, claiming that the absence of a PIA "injure[d] its interest in using the information contained in the assessment 'to focus public attention on emerging privacy and civil liberties issues.'" *Id.* That injury is, in essence, identical to the injury EPIC posits here to its "longstanding mission to educate the public about the government's collection of personally identifiable information," and each fails because "section 208 of the E-Government Act does not confer any such informational interest on EPIC." *Id.*

Because EPIC's "abstract social interest" in educating the public about privacy issues does not give rise to an organizational injury, "[i]t follows that any resources EPIC used to counteract the lack of a [PIA]—an assessment in which it has no cognizable interest—were 'a self-inflicted budgetary choice that cannot qualify as an injury in fact.'" *Id.* (quoting *Am. Soc. For Prevention of Cruelty to Animals*, 659 F.3d at 25). Even if EPIC were to have alleged a diversion of resources caused by the lack of a PIA—which it has not—any such expenditure would be insufficient to satisfy the requirements of Article III. "Thus, any assertion of organization standing by EPIC under § 208 is foreclosed by [D.C. Circuit] precedent." *EPIC II*, 928 F.3d at 101.

### 2.   *EPIC Has Failed to Establish Associational Standing*

An association invoking federal jurisdiction on behalf of its members "must plausibly allege or otherwise offer facts sufficient to permit the reasonable inference (1) that the plaintiff has at least one member who 'would otherwise have standing to sue in [her] own right;' (2) that 'the interests' the association 'seeks to protect are germane to [its] purpose;' and (3) that 'neither the

claim asserted nor the relief requested requires the participation of the individual members in the lawsuit.'" *Public Citizen*, 297 F. Supp. 3d at 17–18 (quoting *Hunt*, 432 U.S. at 343)).

EPIC's theory of injury to its members mirrors its theory of informational injury to EPIC itself: By failing to publish a PIA, EPIC alleges, Defendants "unlawfully denied EPIC's Members . . . a full and timely assessment of how their privacy interests will be affected" and "the ability to assess how their privacy interests have been affected by Defendants' use of facial recognition and social media monitoring tools."  Compl. ¶¶ 60-61, ECF 1 at 15; *see also id.* ¶ 68, ECF 1 at 17. In support of that allegation, EPIC has submitted declarations from two of its members, Woodrow Hartzog and Adrian Gropper. Each states, in identical language, that "I have . . . been denied information to which I am legally entitled concerning the privacy implications of the USPS's use of facial recognition and social media monitoring technology," and that "I have been irreparably harmed by the Postal Service's unlawful failure to publish the required [PIA]" because "I am unable to determine whether the USPS and USPIS have fully considered or addressed the risks to my privacy." Hartzog Decl. ¶¶ 14-15, ECF 1-5 at 4; Gropper Decl. ¶¶ 14-15, ECF 1-6 at 4-5. In short, the alleged injury to EPIC's members, like the alleged injury to EPIC itself, is the denial of access to the information that EPIC believes would be contained in a PIA.

But "Section 208 was not designed to vest a general right to information in the public." *EPIC II*, 928 F.3d at 103. Instead, "the statute was designed to protect individual privacy by focusing agency analysis and improving agency decision-making," making it "fundamentally different from statutes like the Freedom of Information Act . . . where the harm Congress sought to prevent was a lack of information itself." *Id.* "Because the lack of information itself is not the harm that Congress sought to prevent through § 208, EPIC must show how the lack of a timely PIA caused its members to suffer the kind of harm that Congress did intend to prevent: harm to

individual privacy." *Id.* at 103-04. But EPIC's complaint and supporting declarations in this case cabin their theory of injury to informational access alone. Absent any allegations of an underlying privacy harm attributable to the lack of a PIA, EPIC "cannot show an informational injury" to its members, and thus cannot establish standing. *Id.* at 104.

### B.   EPIC AND ITS MEMBERS' ALLEGED INJURIES ARE NOT REDRESSABLE

"Redressability examines whether the relief sought, assuming the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663-64 (D.C. Cir. 1996) (en banc). Redress of the plaintiff's injury must be "likely, as opposed to merely speculative." *Lujan*, 504 U.S. at 561. When a plaintiff challenges an agency's alleged failure to follow proper procedures in reaching a decision, as distinct from the substantive decision itself, the "plaintiff need not show that better procedures would have led to a different substantive result." *Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*, 489 F.3d 1267, 1278 (D.C. Cir. 2007). Likewise, the plaintiff need not show "that court ordered compliance with the procedure would alter the final result." *Nat'l Parks Conservation Ass'n v. Manson*, 414 F.3d 1, 5 (D.C. Cir. 2005). "But deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).

Here, EPIC has framed its injury, and the injury to its members, as a denial of access to information to which they allege they have a legal entitlement, and without which EPIC cannot educate the public about the government's collection of personally identifiable information, and its members cannot assure themselves that USPS and USPIS have fully considered the risks to their privacy of the iCOP program. *See* Compl. ¶¶ 59-61, 66-68, ECF 1 at 14-17; Hartzog Decl. ¶¶

14-15, ECF 1-5 at 4; Gropper Decl. ¶¶ 14-15, ECF 1-6 at 4-5. But requiring Defendants to comply with Section 208 of the E-Government Act would likely not redress that injury.

Section 208's provision for publication of PIAs is far from absolute. Instead, it requires publication only "if practicable," and even that provision "may be modified or waived for security reasons, or to protect classified, sensitive, or private information contained in an assessment." E-Government Act §§ 208(b)(1)(B)(iii), (b)(1)(C). Section 208 goes on to designate the Office of Management and Budget ("OMB") as the agency responsible for "develop[ing] policies and guidelines for agencies on the conduct of [PIAs]" and for "oversee[ing] the implementation of the [PIA] process throughout the Government." *Id.* § (b)(3). And OMB has explained that "sensitive" information includes information "potentially damaging to a . . . law enforcement effort." M-03-22, OMB Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002.[4]

Thus, even if this Court were to require USPS to conduct a PIA in accordance with Section 208, USPS would remain free to withhold all or part of that PIA from publication in order to protect against public disclosure of sensitive information pertaining to USPIS's law enforcement efforts. Given that iCOP is a law enforcement program, EPIC cannot show that USPS would be "likely" to reveal sufficient details about the program to redress the concerns identified in the complaint, when doing so could risk iCOP's effectiveness. EPIC thus cannot meet its burden to establish that a ruling in its favor would likely redress its alleged injury.

Nor can EPIC rely instead on the reduced burden for allegations of procedural injuries, on the theory that it merely seeks to compel USPS to follow Section 208's PIA procedure. EPIC has failed to establish any concrete interest of its own, or of its members, affected by the absence of a

---

[4] Available at https://obamawhitehouse.archives.gov/omb/memoranda_m03-22/#9 (last visited October 19, 2021).

PIA. In attempting to compel USPS to conduct the PIA process, EPIC thus seeks procedure for the sake of procedure. That cannot create standing.

## II. DEFENDANTS ARE EXEMPTED FROM THE APA, AND EPIC THEREFORE LACKS A CAUSE OF ACTION

To bring suit in federal court, a plaintiff must have "a cause of action under the statute" it claims affords it relief, or in other words, the plaintiff must "fall[] within the class of plaintiffs whom Congress has authorized to sue." *Lexmark Intern. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). "The E–Government Act," however, "does not provide for a private cause of action, and accordingly, Plaintiff has sought judicial review pursuant to Section [706] of the APA." *EPIC v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 315 (D.D.C. 2017). But the Postal Service is not subject to the APA.

In the PRA, Congress provided that "no Federal law dealing with public or Federal contracts, property, works, officers, employee, budgets, or funds, *including the provisions of chapter 5 and 7 of title 5*, shall apply to the exercise of the powers of the Postal Service." 39 U.S.C. § 410(a) (emphasis added). As a result, "the Postal Service is exempt from review under the Administrative Procedure Act." *N. Air Cargo v. USPS*, 674 F.3d 852, 858 (D.C. Cir. 2012); *accord, e.g.*, *Carlin*, 823 F.2d at 622–23; *Nat'l Easter Seal Soc'y*, 656 F.2d at 766–67; *Currier v. Potter*, 379 F.3d 716, 725 (9th Cir. 2004); *Booher v. USPS*, 843 F.2d 943, 945 (6th Cir.1988); *Harrison v. USPS*, 840 F.2d 1149, 1155 (4th Cir.1988).[5]

---

[5] Judicial review remains available for *ultra vires* actions by USPS. *See Aid Ass'n for Lutherans v. USPS*, 321 F.3d 1166, 1173 (D.C. Cir. 2003). But that non-statutory cause of action "is intended to be of extremely limited scope." *Griffith v. Federal Labor Relations Authority*, 842 F.2d 487, 493 (D.C. Cir. 1988). For an *ultra vires* claim to succeed, the agency "must have stepped so plainly beyond the bounds of the [relevant statute], or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court." *Local 130, IUERMW v. McCulloch*, 345 F.2d 90, 95 (D.C. Cir. 1965). In other words, a plaintiff raising such a claim "must show a 'patent violation of agency authority.'" *Am. Clinical Lab. Ass'n v. Azar*, 931 F.3d

Both counts of the complaint purport to sue under 5 U.S.C. § 706, which falls within Chapter 7 of Title 5. *See* Compl. ¶ 57 (Count I), ¶ 65 (Count II), ECF 1 at 14, 16 (alleging violations of 5 U.S.C. § 706). Because EPIC's claims for relief are grounded solely in the APA, the PRA precludes review and EPIC has no cause of action.

## III.   DEFENDANTS ARE NOT SUBJECT TO THE E-GOVERNMENT ACT

Even if Plaintiff could establish standing, and even if review were available under the APA, this suit would still merit dismissal, because Section 208 of the E-Government Act does not apply to USPS, or its component USPIS. The PRA's sweeping exemption of USPS from laws otherwise generally applicable to federal agencies confirms that Congress did not intend to subject USPS to regulatory requirements of the kind that EPIC attempts to impose in this case, and the E-Government Act's definition of an "agency" subject to Section 208 does not require a contrary conclusion.[6]

### A.   The Postal Reorganization Act Exempts USPS from the E-Government Act

In Section 410 of the PRA, Congress determined to exempt USPS from the general application of the laws governing federal agencies, with limited carve-outs for specific laws such as the Freedom of Information Act, "or as otherwise provided *in this title*," i.e., Title 39 of the

---

1195, 1208 (D.C. Cir. 2019) (quoting *Indep. Cosmetic Mfrs. & Distribs., Inc. v. U.S. Dep't of Health, Educ. & Welfare*, 574 F.2d 553, 555 (D.C. Cir. 1978)). EPIC makes no allegation of any such violation here.

[6] Defendants' voluntary compliance with some aspects of the E-Government Act does not suggest that they may be involuntarily compelled to comply with other aspects of Act. Only Congress has the power to impose statutory obligations on federal agencies. *See, e.g.*, *Armstrong v. Exec. Office of the President*, 90 F.3d 553, 566 (D.C. Cir. 1996) (rejecting argument that the National Security Council was subject to FOIA because it had "voluntarily subjected certain of its records" to FOIA, because "[t]he NSC's prior references to itself as an agency are not probative on the question before the court—whether the NSC is indeed an agency within the meaning of the FOIA."); *EPIC v. Nat'l Sec. Comm'n on Artificial Intelligence*, 419 F. Supp. 3d 82, 87 (D.D.C. 2019) ("Of course, an entity is not subject to FOIA simply because it has a FOIA website.").

United States Code. 39 U.S.C. § 410(a) (emphasis added). Aside from those limited exceptions, "no Federal law dealing with public or Federal contracts, works, officers, employees, budgets, or funds . . . shall apply to the exercise of the powers of the Postal Service." 39 U.S.C. § 410(a). That provision amounts to "a broad exemption from many of the laws that constrain the day-to-day administration of other federal agencies." *Am. Postal Workers Union, AFL-CIO v. USPS*, 541 F. Supp. 2d 95, 95-96 (D.D.C. 2008) ("*Postal Workers Union*"). Section 208 falls within the terms of that broad exemption, but does not appear in Section 410(b)'s closed list of carve-outs, or indeed anywhere in Title 39.

The E-Government Act, and Section 208 specifically, plainly "deal[s] with" federal contracts, works, officers, and employees, and imposes obligations affecting agency budgets and funds. It applies when agencies "develop[] or procur[e] information technology," requires action by "the Chief Information Officer, or equivalent official, as determined by the head of the agency," and requires agencies to follow guidance from the Director of the Office of Management and Budget. E-Government Act § 208(b)(1)(A)(i), (b)(1)(B)(ii), (b)(2). Section 410 "was meant to be a broad exemption." *Nat'l Easter Seal Soc'y*, 656 F.2d at 767. Its reach is "not limited to laws whose 'sole' or 'prevailing' purposes relate to those matters" listed in Section 410; "[t]hus, even if [a statute] does not deal directly with officers or budgets [or the other matters listed in Section 410], it does not follow that [that statute] is outside the set of laws from which USPS is exempt under the Postal Reorganization Act." *Postal Workers Union*, 541 F. Supp. 2d. at 96.

The carve-outs to Section 410's broad exemption further indicate that the E-Government Act does not apply to USPS. In those carve-outs, Congress determined that certain provisions of federal law would apply to USPS, "notwithstanding the fact that they might 'deal with' officers, budgets, and the like." *Id.* "Notably, the list includes" statutes like the Privacy Act, 5 U.S.C.

15

§ 552a, "that bear a close resemblance" to the E-Government Act. *Id.* Under "[t]he canon of *expression unius*," Congress's recognition that the Privacy Act "required express exception from the § 410(a) exemption makes the absence" of the E-Government Act "from that list significant." *Id.* at 96-97 (holding that Section 410 exempts USPS from the Federal Advisory Committee Act).

Moreover, USPS has considered itself exempt from the E-Government Act "since the date of its enactment," just as it has done with statutes like the Federal Advisory Committee Act. *Id.* at 97. Congress has amended Section 410 twice since the passage of the E-Government Act. *See* Pub. L. 108-178, § 4(J), Dec. 15, 2003, 117 Stat. 2642; Pub. L. 111-350, § 5(k), Jan. 4, 2011, 124 Stat. 3850. "The inescapable conclusion is that Congress was—and has been—aware that laws like FACA"—and like the E-Government Act—"would not apply to the Postal Service absent some express statement to the contrary, and that Congress has done nothing to alter the situation." *Id.* at 97-98.

Congress's purpose in Section 410 was "to remove the [Postal] Service broadly from the system of proceduralized review that Congress uses for overseeing the operations of the administrative state." *Id.* at 98. The E-Government Act is a part of that system, and this Court should respect Congress's judgment not to impose its mandates on the Postal Service.

### B. The E-Government Act Does Not Expressly Apply To USPS

Section 410 of the PRA is clear that the only laws within its scope that nevertheless apply to USPS are those (1) specifically listed in Section 410(b); (2) "otherwise provided in this title," i.e. Title 39; or (3) "such laws [that] remain in force as rules or regulations of the Postal Service." 39 U.S.C. § 410(a). The E-Government Act fits none of those descriptions: It is not listed in Section 410(b); nothing in Title 39 provides for its applicability to USPS; and it is not a rule of regulation of the Postal Service. "[I]t is a commonplace of statutory construction that the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645

(2012) (quoting *Morales v. TransWorld Airlines, Inc.*, 504 U.S. 374, 384 (1992)). Thus, Section 410's specific provisions regarding the limited regulatory burdens Congress intended to apply to the Postal Service govern, notwithstanding any general language in the E-Government Act that might otherwise apply to USPS.

The E-Government Act does not speak directly to the question of whether it applies to the Postal Service. Instead, it borrows the definitional provisions of the Paperwork Reduction Act, 44 U.S.C. §§ 3501-3520. *See* E-Government Act § 201, 44 U.S.C. § 3501 note ("Except as otherwise provided, in this title the definitions under sections 3502 and 3601 of title 44, United States Code, shall apply."). That definition, in turn, does not directly apply to the Postal Service either; as a result, even if the Paperwork Reduction Act's general definitional provisions might apply to the Postal Service, Section 410's specific exemption would still shield the Postal Service from the Act's—and therefore the E-Government Act's—regulatory burdens.

The Paperwork Reduction Act broadly defines the term "agency" to mean "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency," with listed exceptions. 44 U.S.C. § 3502(1). Neither the general definition nor the list of exceptions specifically mentions the Postal Service.

It goes on to define the term "independent regulatory agency" to mean any of a list of specified agencies, including the Postal Regulatory Commission but *not* including USPS, "and any other similar agency designated by statute as a Federal independent regulatory agency or commission." *Id.* § 3502(5).

The Postal Service is "an independent establishment of the executive branch of the Government of the United States." 39 U.S.C. § 201. Standing alone, that language might seem to fall with the definition of an "agency" as an "establishment in the executive branch of the Government." *See, e.g.*, *EPIC v. Nat'l Sec. Comm'n on Artificial Intelligence*, 419 F. Supp. 3d 82, 86 (D.D.C. 2019) (holding the National Security Commission on Artificial Intelligence, "established in the executive branch [as] an independent Commission," fell within Title 5's identical definition of an agency to include an "establishment in the executive branch of the Government"). But "Congress has considered the Postal Service to be in a unique category in the executive branch." *Shane v. Buck*, 658 F. Supp. 908, 915 (D. Utah 1985), *aff'd*, 817 F.2d 87 (10th Cir. 1987). Congress expressly excluded it, for example, from the definition of an "independent establishment" for purposes of Title 5. 5 U.S.C. § 104(1).

In light of that unique position, every court to specifically consider the question has concluded that the Paperwork Reduction Act does not apply to USPS. *Shane*, 658 F. Supp. at 915; *accord Kuzma v. USPS*, 798 F.2d 29, 32 (2d Cir. 1986).

To begin, those courts concluded, USPS does not fall within the scope of the Paperwork Reduction Act's use of the term "independent regulatory agency." "Because the Postal [Regulatory] Commission was included in the definition, but not the Postal Service, one can conclude that Congress considered the Service and intentionally excluded it." *Shane*, 658 F. Supp. at 913; *accord Kuzma*, 798 F.2d at 32 ("the Postal [Regulatory] Commission *is* referred to specifically as an agency subject to the requirements of the" Paperwork Reduction Act, making it "clear, therefore, that Congress could have explicitly subjected USPS to the terms of the [Act] had it wished to do so."). That makes sense in light of the "significant functional differences" between the two entities: The Postal Regulatory Commission "is generally charged with the duty of making

recommendations to the Postal Service regarding rates, fees, and classification matters," with responsibilities of "a 'regulatory' character," whereas USPS "is primarily concerned with the delivery of services, not with regulation." *Shane*, 658 F. Supp. at 913-14. Moreover, the legislative history of the Paperwork Reduction Act indicates that the drafters understood their list of independent regulatory agencies to be exhaustive at the time of drafting, and added the general phrase "any similar agency designated by statute as a Federal independent regulatory agency or commission" to deal with any future such bodies that Congress might create. *Id.* at 914 (citing *Paperwork and Redtape Reduction Act of 1979: Hearing Before the Subcommittee on Federal Spending Practices and Open Government of the Committee on Governmental Affairs*, U.S. Senate, 96th Cong. 1st Session on S. 1411, November 1979).

Nor did those courts view the Postal Service an "agency" within the meaning of 44 U.S.C. § 3502(1), in light of the legislative history and Congressional intent "that the Postal Service was to be freed from pressures from the executive branch and was to be run as a business with minimal Congressional involvement." *Id.* The Paperwork Reduction Act "was enacted ten years after the Postal Reorganization Act," yet "[n]o specific reference to the USPS is made in the [Paperwork Reduction Act]"—in notable contrast to the Postal Regulatory Commission, which "*is* referred to specifically as an agency subject to the requirements of the" Act. *Kuzma v. USPS*, 798 F.2d 29, 32 (2d Cir. 1986). Nor did Congress so much as mention the Postal Service in the "intense and thorough studies and hearings" leading to the enactment of the Paperwork Reduction Act, "despite the reports' thorough coverage of major Federal agencies." *Shane*, 658 F. Supp. at 915 (summarizing legislative history). "Had Congress intended to include the Postal Service within the forthcoming [Paperwork Reduction Act], it certainly would not have excluded it from its reports and recommendations." *Id.*

The legislative history of the E-Government Act is equally devoid of any mention of the Postal Service, or any indication that Congress intended that Act to apply to the Postal Service despite the uniform judicial precedent holding that the Paperwork Reduction Act, whose definition of the term "agency" Congress borrowed for the E-Government Act, does not apply to USPS. *See, e.g.*, H.R. Rep. No. 107-787, 2002 WL 31618478 (Nov. 14, 2002) (Committee Report); *Enhancing the Management and Promotion of Electronic Government Services and Processes*, Senate Hearing on H.R. 2458, 148 Cong. Rec. S11227-01, 2002 WL 31537194 (Nov. 15, 2002) (Senate debate).

Ultimately, however, the Court need not decide whether the Postal Service falls within the general definition of an "agency" subject to the E-Government Act, because even if it did, that conclusion would not displace the specific language of Section 410 of the PRA. In that provision, Congress deliberately lifted much of the regulatory burden on federal agencies from the Postal Service, and specified which statutory obligations would remain. The E-Government Act does not appear on that carefully curated list, so its mandates do not apply to the Postal Service.

## CONCLUSION

For the foregoing reasons, the Court should dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction because Plaintiff lacks standing. Should the Court conclude that Plaintiff has standing, however, it should dismiss under Rule 12(b)(6) because Plaintiff lacks a cause of action, and because the E-Government Act does not apply to USPS.

Dated: October 19, 2021                    Respectfully submitted,

                                           BRIAN M. BOYNTON
                                           Acting Assistant Attorney General

                                           ELIZABETH J. SHAPIRO
                                           Deputy Director

_/s/ Cormac A. Early_
CORMAC A. EARLY
D.C. Bar. No. 1033835
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 616-7420
cormac.a.early@usdoj.gov

_Counsel for Defendants_